## 21-10410

# United States Court of Appeals
*for the*
# Eleventh Circuit

POET THEATRICALS MARINE, LLC, POET PRODUCTIONS, LLC, POET TECHNICAL SERVICES, LLC, POET HOLDINGS, INC.,

*Plaintiffs/Appellees,*

– v. –

CELEBRITY CRUISES, INC.,

*Defendant/Appellant,*

ROYAL CARIBBEAN CRUISES, LTD., et al.,

*Defendants.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 1:20-cv-24619-CMA
(Hon. Cecilia M. Altonaga)

## REPLY BRIEF OF APPELLANT

JOHN C. CAREY
JUAN J. RODRIGUEZ
NICHOLAS J. DOYLE
CAREY RODRIGUEZ MILIAN, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
(305) 372-7474

DAVID M. LEVINE
SANCHEZ FISCHER LEVINE, LLP
1200 Brickell Avenue, Suite 750
Miami, Florida 33131
(305) 925-9947

*Counsel for Defendant/Appellant*

CP COUNSEL PRESS • VA – (804) 648-3664

Poet Theatricals Marine, LLC, et al v. Celebrity Cruises, Inc., No. 21-10410

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a) and Eleventh Circuit Rules 26.1-1 to 26.1-3, defendant-appellant Celebrity Cruises, Inc. ("Celebrity"), as and for its Certificate of Interested Persons and Corporate Disclosure Statement, provides the following alphabetical list of trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

- Altonaga, Hon. Cecilia M. (District Judge, Southern District of Florida);

- Carey, John C. (Counsel for Defendant-Appellant);

- Carey Rodriguez Milian, LLP (Counsel for Defendant-Appellant);

- Celebrity Cruises Inc. (Defendant-Appellant);

- Costco (Parent Corporation of Dismissed Co-Defendant) (NASDAQ: COST);

- Costco Travel (Dismissed Co-Defendant);

- Cruises Inc. (Dismissed Co-Defendant);

- CruiseOne, Inc. (Dismissed Co-Defendant);

- CruiseOne, Inc. d/b/a Dream Vacations (Dismissed Co-Defendant);

C-1

• Direct Line Cruises, Inc. (Dismissed Co-Defendant);

• Doyle, Nicholas J. (Counsel for Defendant-Appellant);

• Fuerst Ittleman David & Joseph (Counsel for Dismissed Co-Defendants);

• Greene, Craig M. (Counsel for Plaintiffs-Appellees);

• Hotelbeds Spain, S.L.U. (Parent Company of Dismissed Co-Defendant Tourico Holidays, Inc.);

• Joseph, Allan A. (Counsel for Dismissed Co-Defendants);

• Kramer, Green, Zuckerman, Greene & Buchsbaum, P.A. (Counsel for Plaintiffs-Appellees);

• Levine, David Matthew (Counsel for Defendant-Appellant);

• Mintz, Mark J. (Counsel for Plaintiffs-Appellees);

• Mintz Truppman, P.A. (Counsel for Plaintiffs-Appellees);

• Poet Holdings, Inc. (Plaintiff-Appellee);

• Poet Productions, LLC (Plaintiff-Appellee);

• Poet Technical Services, LLC (Plaintiff-Appellee);

• Poet Theatricals Marine, LLC (Plaintiff-Appellee);

• Proctor, Gray (Counsel for Plaintiffs-Appellees);

• Riess, Cheryl L. (Counsel for Plaintiffs-Appellees);

• Rodriguez, Juan J. (Counsel for Defendant-Appellant);

Poet Theatricals Marine, LLC, et al v. Celebrity Cruises, Inc., No. 21-10410

- Royal Caribbean Cruises Ltd. (NYSE: RCL) (Parent Corporation of Defendant-Appellant);

- Tourico Holidays, Inc. d/b/a LastMinuteCruise.com (Dismissed Co-Defendant);

- World Travel Holdings (Dismissed Co-Defendant).

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION .................................................................................1

ARGUMENT .......................................................................................3

    I.     The Private-Agreement Exception to Copyright Preemption ...............4

    II.    There Is No Private Agreement Here ....................................................9

    III.   Poet's Characterization of Authorities Is Erroneous
           and Misleading ....................................................................................12

    IV.   Poet Is Responsible for Its Own Decision to Claim Unjust
           Enrichment Rather Than Copyright Infringement or
           Implied-in-Fact Contract ....................................................................19

CONCLUSION ...................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005) ...............................................................5

*AVKO Educ. Rsch. Found. Inc. v. Wave 3 Learning Inc.*,
  No. 15-cv-3393, 2015 WL 6123547 (N.D. Ill. Oct. 15, 2015).................... 13, 14

*Baltimore & Ohio R.R. v. United States,*
  261 U.S. 592 (1923)................................................................................7

*Baron v. Osman*,
  39 So. 3d 449 (Fla. Dist. Ct. App. 2010) ............................................11

*Cadkin v. Loose*,
  No. CV 08-1580, 2008 WL 11336390 (C.D. Cal. Apr. 24, 2008) .... 13, 14, 17, 18

*Davis v. DreamWorks Animation SKG, Inc.*,
  No. 08-80506-Civ, 2009 WL 10700120 (S.D. Fla. May 14, 2009), *vacated in part on other grounds*, 2009 WL 10700121 (S.D. Fla. Sept. 3, 2009)................14

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)................................................................................5

*Forest Park Pictures v. Universal Television Network, Inc.*,
  683 F.3d 424 (2d Cir. 2012) ..............................................................5, 6

*Grosso v. Miramax Film Corp.*,
  383 F.3d 965 (9th Cir. 2004) ................................................................15

*Hercules Inc. v. United States,*
  516 U.S. 417 (1996)................................................................................7

*Lipscher v. LRP Publ'ns, Inc.*,
  266 F.3d 1305 (11th Cir. 2001) ....................................................... 5, 12

*Matthews v. Wozencraft*,
  15 F.3d 432 (5th Cir. 1994) .................................................................17

*Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*,
  264 F.3d 622 (6th Cir. 2001) ...............................................................16

*ProCD, Inc. v. Zeidenberg*,
86 F.3d 1447 (7th Cir. 1996) ........................................................... 5, 16

*Rabon v. Inn of Lake City, Inc.*,
693 So. 2d 1126 (Fla. Dist. Ct. App. 1997) ..........................................7

*Rite-Way Painting & Plastering, Inc. v. Tetor*,
582 So. 2d 15 (Fla. 2d DCA 1991) ......................................................6

*Teets v. Chromalloy Gas Turbine Corp.*,
83 F.3d 403 (Fed. Cir. 1996) ...............................................................7

*Tipper v. Great Lakes Chem. Co.*,
281 So. 2d 10 (Fla. 1973) ................................................................ 5-6

*Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*,
596 F.3d 1313 (11th Cir. 2010) .........................................................17

*Wimer v. Reach Out Worldwide, Inc.*,
CV 17-1917-RSWL-ASX, 2017 WL 5635461
(C.D. Cal. July 13, 2017) ............................................................ 14, 15

## Statutes and Other Authorities:

17 U.S.C. § 106(1) ...............................................................................15

17 U.S.C. § 106(2) ...............................................................................15

17 U.S.C. § 301(a) ........................................................................ *passim*

17 U.S.C. § 301(b) .................................................................................8

H.R. Rep. 94-1476, 1976 U.S.C.C.A.N. 5659 ....................................16

*Restatement (Second) of Contracts* § 4, cmt. b....................................6, 7

Melville B. Nimmer, *Nimmer on Copyright*, § 1.01(B)(1)(g) .......................... 17, 18

iii

## INTRODUCTION

Poet's response brief presents this Court with the same erroneous argument that led the district court astray. Poet argues that its unjust enrichment claim qualifies for an exception to copyright preemption because the factual foundation for the claim involves a "contractual promise to pay," Appellees' Br. at i, that "created a continuing expectation of payment," *id.*, despite the fact that all contracts between the parties had expired. The argument conflates distinct legal concepts and, if adopted, would sow confusion in the copyright-preemption landscape nationwide. The decision in this case will be noted in the copyright field, particularly in the major treatises. Clear legal reasoning is needed to avoid a consequential error.

It is well settled that copyright preemption does not extend to the enforcement of private agreements because they do not constitute generally applicable law. Parties can agree on compensation for the use of a creative work on their own terms and without regard for whether copyright law would furnish a comparable remedy or any remedy at all. Where the parties do not have an express, formal agreement, a claim based on implied-in-fact contract may still escape preemption. Such a claim recognizes the existence of an actual, enforceable agreement between the parties, and thus escapes preemption no less than a claim based on an express agreement.

Absent agreement of the parties, the Copyright Act establishes the exclusive scheme of rights and remedies for works within the subject matter of copyright.

1

Unlike private agreements, claims such as unjust enrichment or implied-in-law contract arise by legal ruling—hence, the nomenclative distinction between "implied-in-fact" and "implied-in-law" contracts. Such claims remain subject to preemption because they would constitute a body of law equivalent to copyright, which the preemption statute forbids.

In the present case, it is undisputed that the parties had agreements that expired before the time period relevant to this action. Poet was therefore unable to bring a claim based on those agreements. Nor could Poet have alleged an implied-in-fact agreement because the facts show precisely the opposite; the agreements explicitly provided for their own termination, so the only agreement was that the obligations were to end on their expiration dates. As Celebrity's opening brief explained, the termination of those agreements left Poet in the position of anyone who is without express or implied-in-fact contractual rights: preemption applies, and copyright is the exclusively applicable body of law.

Recognizing that the agreements in this case expired long ago, Poet's strategy is to blur the distinction between agreements implied in fact and those implied in law. Poet argues that it is enough for a claim to have some connection to an agreement, even if the agreement is expired. Copyright preemption doctrine, however, does not admit such a loose exception. At its outer boundary, the exception to preemption encompasses implied-in-fact contracts but not implied-in-law

contracts.  Poet's unjust enrichment claim, like an implied-in-law contract, depends on the creation of rights by operation of law and remains subject to preemption.  To hold otherwise would destroy the linchpin of the private-agreement exception to copyright preemption, which is that private agreements are not law.  There is no private agreement to enforce here, thus there can be no exception to preemption.

The Court should hold Poet's unjust enrichment claim preempted by the Copyright Act and reverse the district court's order remanding that claim to state court.

## ARGUMENT

The fundamental error repeated throughout the response brief is that Poet had a contractual expectation of payment.  The contracts on which Poet bases that false premise expired.  That is why Poet does not claim breach of contract.  An expectation of payment based on an expired contract is nonsensical.  Poet had no contractual expectation of payment beyond the term of the contract.

Poet misled the district court into adopting that false premise.  The district court held Poet had a "right to royalties and licensing fees . . . based upon the agreed licensing terms between Plaintiffs and Celebrity," Doc. 42 - Pg. 12, which introduced "an extra element (expectation and agreement of payment) that changes the nature of the claim," *id.*, and thus defeats preemption.

The district court's error is manifest.  The "agreed licensing terms" included provisions stating that the agreements would terminate on dates certain.  Poet's claims and arguments explicitly concern only post-termination events.  Poet had no "right to royalties and licensing fees . . . based on the agreed licensing terms" at that point.  To the contrary, the only agreement the parties had about the post-termination time frame was that their respective rights and obligations would no longer exist.

By invoking expired contractual rights as a basis for overcoming preemption, the district court overstepped the bounds of the private-agreement exception to copyright preemption.  The district court's decision should be reversed.

## I.    The Private-Agreement Exception to Copyright Preemption

The district court's analysis does not address the metes and bounds of the private-agreement exception to copyright preemption.  Due consideration of the relevant principles confirms that the district court erred.

Preemption under 17 U.S.C. § 301(a) makes the Copyright Act the exclusive legal framework for resolving disputes over subject matter within the act's scope.  Private agreements are an exception because parties may freely agree to an arrangement that is more or less generous than the Copyright Act would afford.  Where the parties are in agreement, copyright law need not intervene, and the ad hoc enforcement of private arrangements poses no challenge to the dominion of copyright law in dispute resolution.  In short, private agreements are not law, and

therefore do not violate the preemption statute's proscription against "rights that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a); *see Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1318 (11th Cir. 2001) ("[C]laims involving two-party contracts are not preempted because contracts do not create exclusive rights, but rather affect only their parties."); *see also Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 431–32 (2d Cir. 2012) (collecting cases); *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) (same); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996) ("A copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.'").

Accordingly, parties may even agree to pay to use material that is not copyrightable at all. For example, a database of names and phone numbers may be insufficiently original to copyright, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 363 (1991), yet copies or subscriptions may be sold to buyers who would rather not have to gather the information themselves. Copyright preemption does not govern such voluntary transactions.

The private-agreement exception applies not only to express, formal contracts but also to implied-in-fact contracts, which recognize an actual agreement between the parties despite the absence of formal expression. *See Tipper v. Great Lakes*

*Chem. Co.*, 281 So. 2d 10, 13 (Fla. 1973) ("Express contracts and contracts implied in fact require the assent of the parties . . . ."); *see also Forest Park*, 683 F.3d at 432 ("As long as the elements of a contract are properly pleaded, there is no difference for preemption purposes between an express contract and an implied-in-fact contract."). Again, because the parties are held to be in mutual agreement, the enforcement of that private bargain does not undermine copyright law.

The private-agreement exception does not, however, extend to implied-in-law contracts, which do not reflect an actual agreement between the parties but a judgment in court that fairness or equity requires the imposition of obligations. *Tipper*, 281 So. 2d at 13 ("[C]ontracts implied in law, commonly called 'quasi contracts', are obligations imposed by law on grounds of justice and equity, and do not rest upon the assent of the contracting parties. This legal fiction was adopted by the law to provide a remedy in instances where one of the contracting parties is unjustly enriched.").

> A contract implied in law . . . is fundamentally a different legal concept than either a contract implied in fact or an express contract. . . . [A]s a general rule, unlike a true contract based upon the express or apparent intention of the parties, a quasi-contract is not based on a promissory agreement or the apparent intention of the parties to undertake the performance in question. Restatement (Second) of Contracts § 4, cmt. b (1982). Quasi-contracts or contracts implied in law "are obligations imposed by law to prevent unjust enrichment. . . ." *Rite-Way Painting & Plastering, Inc. v. Tetor*, 582 So. 2d 15, 17 (Fla. 2d DCA 1991) (citations omitted). Quasi-contracts, therefore, are obligations created by the law for reasons of justice, not by the express or

> apparent intent of the parties.  Thus, it may be said that obligations of this type should not properly be considered contracts at all, but a form of the remedy of restitution.  *See* Restatement (Second) of Contracts § 4, cmt. b.

*Rabon v. Inn of Lake City, Inc.*, 693 So. 2d 1126, 1131–32 (Fla. Dist. Ct. App. 1997);

*see also Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407 (Fed. Cir. 1996)

("An implied-in-fact contract is an agreement 'founded upon a meeting of the minds,

which, although not embodied in an express contract, is inferred, as a fact from

conduct of the parties showing, in the light of the surrounding circumstances, their

tacit understanding.'  By comparison, an implied-in-law contract is a 'fiction of law

where a promise is imputed to perform a legal duty, as to repay money obtained by

fraud or duress.'" (quoting *Baltimore & Ohio R.R. v. United States,* 261 U.S. 592,

597 (1923); *Hercules Inc. v. United States,* 516 U.S. 417, 424 (1996))).

Unlike the ad hoc enforcement of private agreements, the recognition of

implied-in-law rights in material that falls within the subject matter of copyright

would necessarily give rise to a body of law operating parallel to, and independent

from, copyright law.  Such rights would be "equivalent to" copyright, 17 U.S.C.

§ 301(a), and are exactly what copyright preemption is intended to prevent.

In addition to being inapplicable to private agreements, preemption is limited

to works "within the general scope of copyright."  *Id.*  This creates a subject-matter

requirement for preemption.  If the subject matter is within the scope of copyright,

§ 301(a) preemption applies and copyright law governs exclusively.  If the subject

matter is not within the scope of copyright, § 301(a) is by its terms inapplicable, and § 301(b) further explains that "[n]othing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—(1) subject matter that does not come within the subject matter of copyright," 17 U.S.C. § 301(b).

Because preemption is inapplicable both to private agreements and to subject matter outside the scope of copyright, the resulting framework comprises a set of permutations that can be visualized as follows:

| | Subject Matter Within Copyright | Subject Matter Not Within Copyright |
|---|---|---|
| **Private Agreement** | Express Contract<br><br>Implied-in-Fact Contract<br><br>Copyright<br>(if agreement breached) | State Law, including<br>Express Contract<br>Implied-in-Fact Contract<br>Implied-in-Law Contract<br>Unjust Enrichment<br>etc. |
| **No Private Agreement** | Copyright | State Law, including<br>Implied-in-Law Contract<br>Unjust Enrichment<br>etc. |

## II.    There Is No Private Agreement Here

The video recordings and still photographs at issue in this case are obviously within the subject matter of copyright.  *See* Appellant's Br. at 11–12.  The district court agreed, Doc. 42 - Pg. 7 ("Plaintiffs' claims plainly come within the subject matter of copyright" (footnote omitted)), Poet has never contended otherwise, and indeed Poet has not cross-appealed that determination.

At all times relevant to this action, there was no longer a valid, subsisting private agreement, as it is undisputed that all prior agreements had already expired. That is precisely why Poet fashioned its claim as an implied-in-law claim for unjust enrichment.  Under the framework of copyright preemption, the fact that the works fall within the subject matter of copyright, combined with the absence of a private agreement, means that preemption applies.  Poet has a copyright claim, or it has nothing.

The district court's holding that Poet had a "right to royalties and licensing fees . . . based upon the agreed licensing terms between Plaintiffs and Celebrity," Doc. 42 - Pg. 12, is erroneous because the agreements had terminated.  The quoted language suggests the court believed the agreements remained in effect, and indeed, two of the three cases the court cited in support of its holding concerned subsisting agreements.  *See* Appellant's Br. at 14–16, 24; Doc. 42 - Pg. 12–13.  At another point, however, the district court mentioned in the course of a long footnote that the

agreements had expired.  *See* Doc. 42 - Pg. 14 n.11 (explaining that claims against co-defendants were dismissed because Poet had not shown how "Celebrity's duties under the expired licensing agreements can be imputed" to others).

Most likely, the district court was led astray by Poet's conflation of private agreements, which are not preempted, and obligations created by operation of law, such as unjust enrichment or implied-in-law contract, which are preempted.  By coloring its unjust enrichment claim as arising from the parties' expired agreements, Poet blurred that distinction.  As a result, the district court failed to adhere to the dispositive legal difference between express or implied-in-fact agreements on the one hand, and rights created by operation of law, such as unjust enrichment, on the other.

On appeal, Poet pursues the same strategy.  For instance, Poet states that the alleged use of video recordings after the expiration of the contracts "violated the contracts."  Appellees' Br. at 12.  At best, such statements appear designed to sow confusion.  More generally, Poet argues that the viability of a claim for unjust enrichment or implied-in-law contract depends on the facts.  But the only way the facts can help Poet escape preemption is if those facts establish a private agreement.  If the facts merely support an argument for rights that might be recognized by operation of law, such as unjust enrichment or implied-in-law contract, preemption remains applicable.

10

Here, the facts could not be clearer.  There were agreements.  They had stated termination dates, and by their terms they expired.  It is impossible to imply a contract in fact between the parties because the parties explicitly agreed that, as of those dates, the agreements would end.  *Cf. Baron v. Osman*, 39 So. 3d 449, 451 (Fla. Dist. Ct. App. 2010) ("[T]he law will not recognize an implied-in-fact contract where an express contract exists . . . .").  Poet conceded as much by electing to bring a claim for unjust enrichment rather than a claim for breach of contract or implied-in-fact contract.  Poet admitted that it really had no choice "because the contracts have expired."  Doc. 30 – Pg. 8.  Accordingly, Poet framed its claim for unjust enrichment as an implied-in-law contract claim.  *Id.*; *see also id.* at 9 ("Poet's use of unjust enrichment is simply acknowledging that actions outside the scope of a[n expired] contract cannot be said to breach that contract.").

Undaunted, Poet contends that "the contracts are essential to Poet's claim, because it would be unjust to reward Celebrity for waiting until they expired to use Poet's Project Materials without payment."  Appellees' Br. at 12.  That statement encapsulates the fault in Poet's argument and in the district court's decision.  Waiting for the agreements to expire before ending payments due under the agreements was of course utterly unassailable and exactly the right thing to do.  And the plea that it would thereafter be unjust to permit use without payment simply begs the question whether Poet has any post-termination rights to assert.  Poet hopes to throw the

11

question to a judge or jury in state court and see what happens. Section 301(a) of the Copyright Act, however, makes the question one of federal copyright law, not one of state unjust enrichment law.

Contrary to Poet's characterization, the alleged genealogical relationship between its unjust enrichment claim and the expired agreements does not change the legally imposed nature of the claim. Private agreements escape preemption because they do not give rise to a body of generally applicable law equivalent to copyright. *Lipscher*, 266 F.3d at 1318. Legally imposed rights, such as unjust enrichment and implied-in-law contract, by contrast, would have precisely that effect, giving rise to a competing body of law operating independently from copyright.

It is undisputed that there is no private agreement to enforce here. Poet's unjust enrichment claim requires the creation of rights under a body of common law alternative to copyright law. This is exactly what copyright preemption forbids.

## III.    Poet's Characterization of Authorities Is Erroneous and Misleading

Celebrity's opening brief laid out the extensive appellate authority distinguishing express or implied-in-fact contracts on the one hand, and unjust enrichment or implied-in-law contracts on the other hand, for purposes of copyright preemption. Appellant's Br. 20-23. The brief augmented its citation of extensive appellate authority with a discussion of the leading treatises and a sampling of district court authority for good measure. *Id.* at 24 n.4.

12

In response, Poet argues that "many other district courts have held that unjust enrichment claims based on a contract-based expectation of payment are not preempted." Appellees' Br. at 12–13. Poet underwhelmingly cites four unreported district court cases in total. Three of the four are the same ones cited in the decision on appeal. As explained in Celebrity's opening brief, two of those three are inapposite because they were based on extant contractual agreements. *See* Appellant's Br. at 15–16, 24 (discussing *Cadkin v. Loose*, No. CV 08-1580, 2008 WL 11336390 (C.D. Cal. Apr. 24, 2008), and *AVKO Educ. Rsch. Found. Inc. v. Wave 3 Learning Inc.*, No. 15-cv-3393, 2015 WL 6123547 (N.D. Ill. Oct. 15, 2015)). The court in *Cadkin*, while observing that "Cadkin does not state a claim for breach of contract," 2008 WL 11336390, at *3, noted that "Cadkin anticipates amending th[e] complaint to include causes of action for breach of contract and similar claims," *id.* at *3 n.2 (quoting Cadkin's motion to remand) (alteration in original). The court regarded cases holding unjust enrichment claims preempted "distinguishable on the grounds that Cadkin alleges unjust enrichment based on Loose's violation of the parties' contract." *Id.* at *3. Poet itself notes *Cadkin*'s reference to a contractual expectation of compensation by both parties, a circumstance obviously not present in the post-termination time frame here.

The decision in *AVKO* follows the same logic. The existence of a subsisting copyright license agreement was undisputed. In fact, the plaintiff in *AVKO* brought

13

claims for not only unjust enrichment but also breach of contract and copyright infringement. The court acknowledged that claims for unjust enrichment are normally preempted but made an exception "[t]o the extent that Plaintiff's unjust enrichment claim relies on the failure to pay royalties and licensing revenues from an agreement." *AVKO*, 2015 WL 6123547, at *5.

The third case, *Davis v. DreamWorks Animation SKG, Inc.*, No. 08-80506-Civ, 2009 WL 10700120 (S.D. Fla. May 14, 2009), *vacated in part on other grounds*, 2009 WL 10700121 (S.D. Fla. Sept. 3, 2009), is simply wrong, as it explicitly treated claims based on theories of unjust enrichment or implied-in-law contract the same, for preemption purposes, as claims based on the very different theory of implied-in-fact contract. *See* Appellant's Br. at 24. Poet discusses all of these cases as though it is the first to raise them, while failing to rebut Celebrity's argument about them.

Poet cites one new case not previously discussed: the unreported district court decision in *Wimer v. Reach Out Worldwide, Inc.*, CV 17-1917-RSWL-ASX, 2017 WL 5635461 (C.D. Cal. July 13, 2017). Like *AVKO* and *Cadkin*, the court in *Wimer* found that the allegations supported a bone fide private-agreement exception to preemption, this time based on implied-in-fact contract:

> Plaintiff alleges Defendants benefitted from the Works without compensating him. In other parts of the Complaint, Plaintiff alleges that Walker indicated that he would be compensated for his role in ROWW and would work "formally and informally" with the charitable corporation. . . . This "extra element"—of an implied promise to compensate Plaintiff—"transforms the action

from one arising under the ambit of the federal statute to one
sounding in contract."

*Id.* at *4 (citations omitted) (quoting *Grosso v. Miramax Film Corp.*, 383 F.3d 965,

968 (9th Cir. 2004)).  The court explained

> It is true that the Complaint also alleges that Defendants were
> unjustly enriched by profiting from the Works without Plaintiff's
> consent and without legal rights to the works.  At first, this
> allegation seems equivalent to the Copyright Act's exclusive
> right to reproduce the work or distribute copies, 17 U.S. [sic] §
> 106(1),(2).  Were the Court to subscribe to this reasoning—
> particularly in a case like this where it is unclear whether the
> plaintiff even has a valid copyright registered—any time a party
> mentioned that the other party "benefitted" from a potentially
> copyrightable work, preemption would be the only result and
> would invariably swallow up viable state law claims.

*Id.*  The additional allegation of an actual promise of compensation was therefore

indispensable to the court's ruling.

There is no such promise here.  By Poet's own admission, Celebrity "wait[ed]

until [the agreements] expired to use Poet's Project Materials without payment."

Appellees' Br. at 12.  In other words, Celebrity waited until there was no longer a

promise to pay, diametrically opposite to the allegations in *Wimer*.

Poet fares no better in its attempt to dig out from the avalanche of appellate

authority cited in Celebrity's opening brief.  At every turn, Poet is forced to

acknowledge that appellate courts have drawn a bright line between express or

implied-in-fact contracts on one hand, and unjust enrichment or implied-in-law

contract claims on the other hand.  Poet's tactic is to deny that it ever "ma[de] any

argument based on 'enrichment,'" *id.* at 16, and to place all its chips on the notion that "[t]he expired contracts create a legitimate expectation of payment," *id.* at 17. *See also id.* at 15 ("Poet's kind of unjust enrichment claim . . . relies on a contractually derived expectation of payment."); *id.* ("Poet's unjust enrichment claim incorporates a contractually derived expectation of compensation."); *id.* at 17 (relying on "Celebrity's promise to use the Project Materials only as permitted, and to pay a licensing fee for any other use of the Project Materials"). According to Poet, Celebrity's contractual promise and Poet's contractual expectation bring the case within the ambit of the private-agreement exception to preemption because, under cases like *Murray Hill Publications, Inc. v. ABC Communications, Inc.*, 264 F.3d 622 (6th Cir. 2001), the contracts "add an element—namely the element of a promise to pay—to the acts of reproduction, performance, distribution or display that constitute the unauthorized use of plaintiffs' work," *id.* at 638.

Poet's thesis is counterfactual. The agreements between the parties expired. Celebrity's promise of payment expired. Poet admits that the promise expired. Yet Poet persists. In perhaps the most unvarnished attempt to dress its unjust enrichment claim in breach-of-contract clothing, Poet goes so far as to argue that

> [p]arties like Poet and Celebrity have voluntarily, through contract, agreed to a system of rights and remedies that suit their own particular business relationship. Copyright law was not intended to supplant this "private ordering, essential to the efficient functioning of markets." *ProCD*, 86 F.3d at 1455; *see also* H.R. REP. 94-1476, 132, 1976 U.S.C.C.A.N. 5659, 5748

16

> ("Nothing in the bill derogates from the rights of parties to
> contract with each other and to sue for breaches of
> contract"). . . . The law should respect the private and
> presumably efficient decision to opt out of the copyright-based
> system of enforcement. *Utopia Provider Sys., Inc. v. Pro-Med
> Clinical Sys., L.L.C.*, 596 F.3d 1313, 1327 (11th Cir. 2010)
> ("Parties may enter a license agreement to avoid the cost of
> having to litigate the validity of a copyright, and this bargain
> between the parties should be honored").

Appellees' Br. at 20–21.  Thus, Poet seeks a private-agreement exemption from copyright preemption on the basis of an expired agreement.  The argument is a contradiction in terms and should be rejected.  *See Matthews v. Wozencraft*, 15 F.3d 432, 441 (5th Cir. 1994) (holding passage of contract termination date extinguished ownership and payment rights for story).

Poet attempts to bring its theory within the ambit of the Nimmer treatise by citing *Cadkin*, which quoted Nimmer for the proposition that preemption may not apply where there is an "expectation of compensation by both parties."  *Cadkin*, 2008 WL 11336390, at *3 (quoting Melville B. Nimmer, *Nimmer on Copyright* § 1.01[B][1][g] at 1–52, 1–53 n. 353).  The key word in that Nimmer quotation is "both," signifying an express or implied-in-fact contract.  It was only on this foundation of a subsisting contractual relationship that the court in *Cadkin* regarded the usual cases holding unjust enrichment claims preempted "distinguishable on the grounds that Cadkin alleges unjust enrichment based on Loose's violation of the parties' contract," *id.* at *3, thus rendering the action "assimilable to a contract cause

of action," *id.* (quoting Nimmer, *supra*, § 1.01[B][1][g] at 1–52, 1–53 n. 353). Regardless of whether the unreported district court decision in *Cadkin* was correct in following such a "no harm, no foul" thought process, the court's reliance on Nimmer simply affirmed the private-agreement exception as consistently laid down by appellate courts. Absent a subsisting private agreement, preemption applies. Because the private agreements in this case expired, there could not have been any "violation of the parties' contract[s]," *id.*, and they cannot save Poet's unjust enrichment claim from preemption.

Poet's elision of the word "both" in the Nimmer quotation reflects the problem at the heart of Poet's argument. While the private-agreement exception requires a mutual or bilateral agreement, Poet alleges its own unilateral expectations without regard for Celebrity's expectations. Poet does not, and cannot, allege that Celebrity expected to make further payments after the agreements expired. To the contrary, the allegation is that Celebrity did exactly the opposite. Poet cannot complain that Celebrity should have paid for post-termination use and, in the same breath, claim that Celebrity shared Poet's expectation that payment would be due. Because the parties did not "both" expect payment under the terms of the expired contracts, the private-agreement exception does not apply, and the unjust enrichment claim is preempted.

Actions speak louder than words. Poet did not bring a claim for breach of contract or implied-in-fact contract precisely because Poet knows that any promise under the parties' agreements expired. Celebrity made no promise of payment beyond the terms of the agreements. Post-termination, the Copyright Act stands as the only potential basis, if any, for Poet to claim compensation for the use of its video recordings and still photographs.

The district court's decision should be reversed.

## IV. Poet Is Responsible for Its Own Decision to Claim Unjust Enrichment Rather Than Copyright Infringement or Implied-in-Fact Contract

A plaintiff is master of the complaint. It was Poet that chose to plead claims for unjust enrichment and not copyright infringement or implied-in-fact contract.

Query why Poet brought a smorgasbord of common-law claims rather than a copyright claim. There is no shortage of remedies under the Copyright Act, making Poet's choice to frame the case under common law rather than copyright suspicious. If Poet has no copyright interest in the video recordings and still photographs at issue, and if there is no subsisting private agreement to enforce, the preemption statute applies, and Poet has no claim. And justly so.

Equally, if Poet has a copyright interest but chose to bring common-law claims in state court for strategic reasons such as a preference for state-court judges or juries, that is a choice Poet has no right to make. Section 301(a) confers on the

Copyright Act exclusive dominion over subject matter within its scope. Nothing is as clearly within its scope as video recordings and still photographs.

Section 301(a) preempts Poet's unjust enrichment claim. The district court erred.

## CONCLUSION

For the foregoing reasons, Celebrity respectfully requests that this Court find Poet's unjust enrichment claim against Celebrity to be preempted by the Copyright Act and reverse the district court's order remanding that claim to state court.

Dated:  July 27, 2021                              Respectfully submitted,

*/s/ John C. Carey*
John C. Carey
jcarey@careyrodriguez.com
Juan J. Rodriguez
jrodriguez@careyrodriguez.com
Nicholas J. Doyle
ndoyle@careyrodriguez.com
**CAREY RODRIGUEZ MILIAN, LLP**
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Tel.: (305) 372-7474

David M. Levine
dlevine@sfl-law.com
**SANCHEZ FISCHER LEVINE, LLP**
1200 Brickell Avenue, Suite 750
Miami, Florida 33131
Tel.: (305) 925-9947

*Counsel for Celebrity Cruises, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 4,695 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

*/s/ John C. Carey*

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2021, seven copies of the Reply Brief were dispatched for delivery to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit by third-party commercial carrier for overnight delivery at the following address:

David J. Smith
Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

On this same date, a copy of the Reply Brief was served on all counsel of record via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

*/s/ Catherine B. Simpson*
Counsel Press
1011 East Main Street
Richmond, VA 23219
(804) 648-3664

Filing and service were performed by direction of counsel