## 21-10410

# United States Court of Appeals
### *for the*
# Eleventh Circuit

---

POET THEATRICALS MARINE, LLC, POET PRODUCTIONS, LLC,
POET TECHNICAL SERVICES, LLC, POET HOLDINGS, INC.,

*Plaintiffs/Appellees,*

versus

CELEBRITY CRUISES, INC.,

*Defendant/Appellant,*

ROYAL CARIBBEAN CRUISES, LTD., et al.,

*Defendants.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:20-CV-24619-CMA
(Hon. Cecilia M. Altonaga)

---

# APPELLANT'S COMBINED PETITION FOR
# REHEARING AND REHEARING *EN BANC*

---

DAVID M. LEVINE
SANCHEZ FISCHER LEVINE, LLP
1200 Brickell Avenue, Suite 750
Miami, Florida 33131
(305) 925-9947

JOHN C. CAREY
JUAN J. RODRIGUEZ
CAREY RODRIGUEZ, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
(305) 372-7474

*Counsel for Defendant/Appellant*

---

CP  COUNSEL PRESS • VA – (804) 648-3664

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a) and Eleventh Circuit Rules 26.1-1 to 26.1-3, defendant-appellant Celebrity Cruises, Inc. ("Celebrity"), as and for its Certificate of Interested Persons and Corporate Disclosure Statement, provides the following alphabetical list of trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

- Altonaga, Hon. Cecilia M. (District Judge, Southern District of Florida);

- Carey, John C. (Counsel for Defendant-Appellant);

- Carey Rodriguez Milian, LLP (Counsel for Defendant-Appellant);

- Celebrity Cruises Inc. (Defendant-Appellant);

- Costco (Parent Corporation of Dismissed Co-Defendant) (NASDAQ: COST);

- Costco Travel (Dismissed Co-Defendant);

- Cruises Inc. (Dismissed Co-Defendant);

- CruiseOne, Inc. (Dismissed Co-Defendant);

- CruiseOne, Inc. d/b/a Dream Vacations (Dismissed Co-Defendant);

- Direct Line Cruises, Inc. (Dismissed Co-Defendant);

- Doyle, Nicholas J. (Counsel for Defendant-Appellant);

- Fuerst Ittleman David & Joseph (Counsel for Dismissed Co-Defendants);

- Greene, Craig M. (Counsel for Plaintiffs-Appellees);

- Hotelbeds Spain, S.L.U. (Parent Company of Dismissed Co-Defendant Tourico Holidays, Inc.);

- Joseph, Allan A. (Counsel for Dismissed Co-Defendants);

- Kramer, Green, Zuckerman, Greene & Buchsbaum, P.A. (Counsel for Plaintiffs-Appellees);

- Levine, David Matthew (Counsel for Defendant-Appellant);

- Mintz, Mark J. (Counsel for Plaintiffs-Appellees);

- Mintz Truppman, P.A. (Counsel for Plaintiffs-Appellees);

- Poet Holdings, Inc. (Plaintiff-Appellee);

- Poet Productions, LLC (Plaintiff-Appellee);

- Poet Technical Services, LLC (Plaintiff-Appellee);

- Poet Theatricals Marine, LLC (Plaintiff-Appellee);

- Proctor, Gray (Counsel for Plaintiffs-Appellees);

- Riess, Cheryl L. (Counsel for Plaintiffs-Appellees);

- Rodriguez, Juan J. (Counsel for Defendant-Appellant);

- Royal Caribbean Cruises Ltd. (NYSE: RCL) (Parent Corporation of Defendant-Appellant);

- Tourico Holidays, Inc. d/b/a LastMinuteCruise.com (Dismissed Co-Defendant);

- World Travel Holdings (Dismissed Co-Defendant).

## <u>STATEMENT REGARDING EN BANC CONSIDERATION</u>

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance: (1) whether a state-law claim that falls within the scope of the Copyright Act's express preemption provision, 17 U.S.C. § 301(a), is necessarily completely preempted, a question that the panel opinion answers in the negative, in conflict with the authoritative decisions of every other United States Court of Appeals that has addressed the issue; (2) whether a party can avoid preemption under the Copyright Act simply by electing not to file a copyright registration, a question that the panel opinion answers in the affirmative, in conflict with the authoritative decisions of every other United States Court of Appeals that has addressed the issue; and (3) whether state-law claims fall within a federal copyright cause of action only when their elements are literally the same as the elements of a copyright claim and not merely qualitatively equivalent, a question that the panel answered in the affirmative, in conflict with the Copyright Act and the authoritative decisions of every other United States Court of Appeals that has addressed the issue.

/s/ John C. Carey
John C. Carey
Carey Rodriguez, LLP
Attorney of Record for Appellant
Celebrity Cruises, Inc.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT............................................C-1

STATEMENT REGARDING EN BANC CONSIDERATION ...............................i

TABLE OF CONTENTS ........................................................... ii

TABLE OF AUTHORITIES............................................................ iii

I.    STATEMENT OF ISSUES FOR REHEARING EN BANC .........................1

II.   STATEMENT OF ADDITIONAL ISSUE FOR PANEL REHEARING........1

III.  COURSE OF PROCEEDINGS AND DISPOSITION OF CASE.................2

IV.   FACTS NECESSARY TO ARGUMENT OF THE ISSUES .........................2

V.    ARGUMENT AND AUTHORITIES ..............................................4

      A.    Issues Warranting Rehearing En Banc ...................................4

            1.    The Panel Decision Conflicts with Precedential Decisions
                of Four Other Circuits by Ruling That a Claim That Falls
                Within § 301(a)'s Preemptive Scope May Nevertheless
                Not Be Completely Preempted ......................................4

            2.    The Panel Departed from the Uniform View of Other
                Circuits That a Party Cannot Evade Preemption by
                Electing Not to Register a Copyright..........................8

            3.    The Panel Departed from Black-Letter Law That Whether
                a State-Law Claim Falls Within the Copyright Cause of
                Action Depends on Qualitative Equivalence, Not Literal
                Identity of Elements ................................................10

      B.    Additional Issue Warranting Panel Rehearing ....................14

VI.   CONCLUSION...........................................................15

# TABLE OF AUTHORITIES

## CASES

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004)..................................................................4, 6, 7, 11

*Beneficial Nat'l Bank v. Anderson*,
    539 U.S. 1 (2003).......................................................................5, 6, 7, 8

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
    373 F.3d 296 (2d Cir. 2004)........................................................5, 10

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
    982 F.2d 693 (2d Cir. 1992)..........................................................7, 11

*Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*,
    965 F.3d 365 (5th Cir. 2020).............................................................12

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
    307 F.3d 197 (3rd Cir. 2002) ...........................................................12

*Foley v. Luster*,
    249 F.3d 1281 (11th Cir. 2001)...................................................7, 11

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.*,
    9 F.3d 823 (10th Cir. 1993).............................................................13

*GlobeRanger Corp. v. Software AG*,
    691 F.3d 702 (5th Cir. 2012)......................................................5, 10

*Kodadek v. MTV Networks, Inc.*,
    152 F.3d 1209 (9th Cir. 1998)....................................................9, 10

*Laws v. Sony Music Ent., Inc.*,
    448 F.3d 1134 (9th Cir. 2006)..................................................11, 12

*Chief authorities are designated by an asterisk.*

iii

*OpenRisk, LLC v. Microstrategy Servs. Corp.*,
  876 F.3d 518 (4th Cir. 2017) ........................................................... 12

*Ritchie v. Williams*,
  395 F.3d 283 (6th Cir. 2005) ............................................................ 5

*Rosciszewski v. Arete Assocs., Inc.*,
  1 F.3d 225 (4th Cir. 1993) .......................................................... 5, 10

*Toney v. L'Oreal USA, Inc.*,
  406 F.3d 905 (7th Cir. 2005) ........................................................... 12

*Trandes Corp. v. Guy F. Atkinson Co.*,
  996 F.2d 655 (4th Cir. 1993) ............................................................ 9

*Ultraflo Corp. v. Pelican Tank Parts, Inc.*,
  845 F.3d 652 (5th Cir. 2017) ........................................................... 12

*United States ex rel. Berge v. Bd. of Trs.*,
  104 F.3d 1453 (4th Cir. 1997) ......................................................... 12

*Wrench LLC v. Taco Bell Corp.*,
  256 F.3d 446 (6th Cir. 2001) ........................................................... 13

## STATUTES

17 U.S.C. § 301 ................................................................................ 9

17 U.S.C. § 301(a) .................................................................. 1, 4, 5, 6

## RULES

Fed. R. App. P. 35 ........................................................................... 4

Fed. R. App. P. 40(a) ...................................................................... 4

## I.    STATEMENT OF ISSUES FOR REHEARING EN BANC

1.    Whether a state-law claim that falls within the scope of the Copyright Act's express preemption provision, 17 U.S.C. § 301(a), is completely preempted, an issue on which the panel's decision conflicts with authoritative decisions of every other United States Court of Appeals that has addressed the issue.

2.    Whether a party can avoid complete preemption under the Copyright Act simply by failing to file a copyright registration, an issue on which the panel's decision conflicts with authoritative decisions of every other United States Court of Appeals that has addressed the issue.

3.    Whether state-law claims fall within a federal copyright cause of action, and are therefore completely preempted, only when their elements are literally the same as the elements of a copyright claim, an issue on which the panel's decision conflicts with the Copyright Act and the authoritative decisions of every other United States Court of Appeals that has addressed the issue.

## II.    STATEMENT OF ADDITIONAL ISSUE FOR PANEL REHEARING

Whether the panel's decision rests in part on a misapprehension that appellees Poet Theatricals Marine, LLC, Poet Productions, LLC, Poet Technical Services, LLC, and Poet Holdings, Inc. (collectively, "Poet") allege appellant Celebrity Cruises, Inc. ("Celebrity") exceeded the terms of the parties' license agreements,

when in fact it is undisputed that all of the allegedly infringing acts occurred after the expiration of the parties' license agreements.

## III.  COURSE OF PROCEEDINGS AND DISPOSITION OF CASE

Poet brought various common-law claims in Florida state court, all based on allegations that Celebrity used certain video recordings and still photographs without Poet's permission.  Celebrity removed the case to the United States District Court for the Southern District of Florida on the ground that Poet's claims were completely preempted by the Copyright Act.  The district court agreed as to all but one claim—unjust enrichment—and remanded the case to state court.

Celebrity appealed the district court's decision that Poet's unjust enrichment claim was not completely preempted.  A panel of this Court heard oral argument on January 11, 2022, and issued an opinion on May 15, 2023, affirming the district court's decision.

## IV.  FACTS NECESSARY TO ARGUMENT OF THE ISSUES

On September 29, 2020, Poet filed a complaint in Florida state court, alleging that Poet had developed and produced theatrical shows for, and then performed the shows on, Celebrity's cruise vessels, pursuant to agreements between the parties. (Doc. 1-2 – Pg. 7-8, ¶¶ 18–20.)  It was undisputed that those agreements expired no later than March 19, 2016.  (*Id.* – Pg. 8, ¶ 20.)

The complaint alleged that Celebrity continued to use "video recordings and still photographs" of the shows after the agreements expired.  (Doc. 1-2 – Pg. 9, ¶ 24; *see also id.* at 8-10, ¶¶ 21, 24–26; *id.* at 13-27, ¶¶ 39-110.)  The complaint explicitly states that it concerns "the intellectual property of" Poet, including "pictures, audio video, . . . photographs, pictures, sound recordings, . . . and all other works of authorship . . . including all worldwide rights therein under . . . copyright." (*Id.* at 9, ¶ 23.)

Count II of the complaint asserted a claim for unjust enrichment based on Celebrity's alleged use of the "creations embodied in the images and recordings of Poet's shows," and based on Poet's allegation that "[f]ollowing the expiration of the agreements under which Celebrity was granted a limited license to use Poet's intellectual property," Celebrity "wrongfully continued to use [Poet's intellectual property] in its websites [and] in certain promotional materials." (*Id.* at 11, ¶¶ 32-33.)  The complaint sought "damages in the amount of the royalties, license fees, and other fees and charges owing to Poet that were not previously sought or recovered."  (*Id.* at 12.)

On November 10, 2020, Celebrity removed the case to federal court, based on the doctrine of complete preemption.  (Doc. 1.)  Poet moved to remand, Celebrity opposed, and on January 28, 2021, the district court issued an order holding all of Poet's claims preempted except for the unjust enrichment claim.  (Doc 42.)  The

district court declined to exercise supplemental jurisdiction over the unjust enrichment claim and remanded the case to state court. (*Id.* at 19.)

On February 7, 2021, Celebrity appealed the district court's order remanding the unjust enrichment claim. (Doc. 46.) On May 15, 2023, this Court affirmed. The panel opinion assumed without deciding that the Copyright Act effects complete preemption, but held that Poet's unjust enrichment claim does not fall within the scope of a copyright cause of action. Celebrity petitions the Court for rehearing en banc under Federal Rule of Appellate Procedure 35, and for panel rehearing under Federal Rule of Appellate Procedure 40(a).

## V.    ARGUMENT AND AUTHORITIES

### A.   Issues Warranting Rehearing En Banc

The panel decision departs in several ways from the authoritative decisions of other circuit courts of appeals, and it conflicts with the Supreme Court's decision in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). Rehearing en banc is warranted.

#### 1. The Panel Decision Conflicts with Precedential Decisions of Four Other Circuits by Ruling That a Claim That Falls Within § 301(a)'s Preemptive Scope May Nevertheless Not Be Completely Preempted

The panel decision acknowledged that "a complaint that (on its face) raises only state-law claims can still be removed 'when a federal statute wholly displaces the state law cause[s] of action through complete pre-emption.'" (Op. 8 (quoting

*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).).  It further acknowledged that "[e]very circuit to consider the issue has held that the Copyright Act . . . is completely preemptive," and assumed the correctness of that conclusion.  (Op. 10). Within that well-established framework, Celebrity's briefing demonstrated that Poet's unjust enrichment claim, despite its state-law label, in fact fell within the scope of the Copyright Act.  It did so by invoking the Copyright Act's express preemption provision, § 301(a), which preempts claims involving "the subject matter of copyright" that assert "rights that are equivalent" to those provided by the Copyright Act—in other words, claims that, qualitatively, sound in copyright.

The panel concedes that in the Second, Fourth, and Fifth Circuits, "Celebrity is right."  (Op. 14.)  All three have held that "state-law claims preempted by the Copyright Act are *completely* preempted."  (Op. 14 (citing *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004); *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225 (4th Cir. 1993), and *GlobeRanger Corp. v. Software AG*, 691 F.3d 702 (5th Cir. 2012)).)  Add to that list the Sixth Circuit, which has similarly evaluated the complete preemption question by asking whether a state-law claim falls within the scope of § 301(a).  *Ritchie v. Williams*, 395 F.3d 283, 285-89 (6th Cir. 2005).  Yet the panel decision expressly departs from these four circuits, holding that even if Poet's claim is preempted under § 301(a), it is not completely preempted.

The panel decision is wrong.  The panel attempts to draw a distinction between falling within a copyright cause of action for purposes of complete preemption, and falling within a copyright cause of action for purposes of ordinary preemption.  (*See also id.* at 15 (stating that complete preemption arises "not where a state claim falls within a statute's preemption provision[,] but where the state-law claim 'comes within the scope of the [exclusive] federal cause of action'" (alteration in original) (quoting *Beneficial Nat'l Bank*, 539 at 8); *id.* ("It's only when a state-law claim 'comes within the scope of [the exclusive federal] cause of action' that the claim is completely preempted." (alteration in original) (quoting *Aetna Health*, 542 U.S. at 210).)  But under the Copyright Act, those inquiries are one and the same.

The panel's opinion does not and cannot explain how the task of determining when a claim falls within the scope of a copyright cause of action is any different in the context of complete preemption than in the context of ordinary preemption.  The statute itself negates any such distinction, because the preemption provision applies only to rights that are equivalent to "rights within the general scope of copyright." 17 U.S.C. § 301(a).  The question in both contexts is the same: whether a claim falls within the scope of copyright.

The panel's decision also fails to explain why  this Court's longstanding test for determining when a state-law claim falls within the scope of copyright for purposes of ordinary preemption should not apply when determining whether a

claim falls within the scope of a copyright cause of action for purposes of complete preemption.  In *Foley v. Luster*, 249 F.3d 1281 (11th Cir. 2001), the Court explained that the "extra element test" applies to determine whether a right "lie[s] within the general scope of copyright," *id.* at 1285.  "Under this test, 'if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright and there is no preemption.'" *Id.* (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)).

Although *Foley* concerned ordinary preemption, there is no basis for departing from the extra element test to determine whether the same state right falls within the general scope of the same federal copyright cause of action for purposes of complete preemption.  The panel's opinion was therefore wrong to install a separate complete preemption inquiry, then fault Celebrity for not addressing it.  (Op. 14.)  Celebrity painstakingly laid out how the unjust enrichment claim satisfies the extra element test.  (Initial Br. of Appellant 5, 12-26.)  The panel ignored Celebrity's arguments about the extra element test because of the panel's inchoate distinction between falling within the scope of a copyright cause of action for purposes of ordinary preemption, and falling within the scope of a copyright cause of action for purposes of complete preemption.  It is a distinction without a difference.

7

Rehearing en banc is warranted to correct the panel's unjustifiable departure from settled law governing the analysis of whether a state-law claim falls within the scope of a federal copyright cause of action—a departure that conflicts with longstanding precedent in every other circuit court of appeals to have addressed the subject.

### 2. The Panel Departed from the Uniform View of Other Circuits That a Party Cannot Evade Preemption by Electing Not to Register a Copyright

Rehearing en banc is further warranted to correct the panel's unjustifiable departure from the uniform view of other circuit courts of appeals that a party cannot defeat copyright preemption by simply electing not to register a copyright. Registration has no bearing on whether a state-law claim falls within the scope of a federal copyright claim.

The panel decision observes that complete preemption applies when, inter alia, a state-law claim "'comes within the scope of the federal cause of action,'" (Op. 10 (quoting *Beneficial Nat'l Bank*, 539 U.S. at 7)), which in turn means that the plaintiff "'could have brought [the state-law] claim under' that exclusive federal cause of action" (*id.* at 11 (quoting *Aetna Health*, 542 U.S. at 210)). So far, so good. But the panel then held that Poet could not have brought a copyright claim because it never registered copyrights in the video recordings and still photographs at issue. This ruling, however, mistakes *the merit* of any copyright claim Poet might have

8

attempted to bring with whether Poet's claim, in substance, falls within *the scope* of the Copyright Act. Taken to its logical conclusion, the argument would enable plaintiffs to defeat preemption at will simply by electing not to register their copyrights.

Not surprisingly, the panel's decision conflicts with the other circuit courts of appeals that have addressed the issue. The Fourth Circuit in *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655 (4th Cir. 1993), rejected a district court's holding that copyright preemption was inapplicable where the plaintiff had not registered a copyright in the work at issue. The Fourth Circuit explained that the registration requirement "has no bearing on the preemption of state law under § 301," *id.* at 658, and "does not affect the broad preemptive scope of § 301," *id.* The court held: "Trandes cannot escape the preemptive effect of § 301 merely by failing to register its copyright in a timely fashion." *Id.* Consistent with that result, in *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209 (9th Cir. 1998), the Ninth Circuit simultaneously rejected a copyright claim because there was no valid registration for a work, *id.* at 1212, and held a state-law unfair competition claim preempted, *id.* at 1212-13.

*Trandes* and *Kodadek* are ordinary preemption cases, but as discussed above, there is no cognizable distinction between falling within a copyright cause of action for purposes of ordinary preemption, and falling within a copyright cause of action for purposes of complete preemption. And any attempt to distinguish *Trandes* and

*Kodadek* on that basis would run into conflict with *Briarpatch*, *Rosciszewski* and *GlobeRanger*, all of which reject such a distinction.

The panel's opinion will sow confusion and spread error if not corrected. Rehearing en banc is warranted.

### 3. The Panel Departed from Black-Letter Law That Whether a State-Law Claim Falls Within the Copyright Cause of Action Depends on Qualitative Equivalence, Not Literal Identity of Elements

Rehearing en banc is warranted to correct the panel's unjustifiable departure from black-letter law dictating that whether a claim falls within the federal copyright cause of action is to be judged by the qualitative equivalence of the state-law claim to the federal claim, not by whether the elements of the state-law claim are literally identical to the copyright claim. The panel's departure conflicts with the plain language of the Copyright Act and with the authoritative decisions of every other circuit court of appeals to have addressed the issue.

The panel held:

> Comparing a copyright claim and Poet's unjust enrichment claim only confirms that Poet's claim falls outside the Copyright Act's exclusive cause of action. A copyright claim requires "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361. By contrast, an unjust enrichment claim, under Florida law, requires proof that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of*

10

> *Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)). These
> elements are entirely different.

(Op. 13.)

This reasoning conflicts with the Supreme Court's decision in *Aetna Health*. Evaluating complete preemption under ERISA, *Aetna Health* warned courts not to "elevate form over substance" and thus "allow parties to evade" complete preemption. (542 U.S. at 215 (internal citation omitted).) And it rejected the notion that "only strictly duplicative state causes of action are pre-empted." (*Id.* at 216). The key question is equivalence, not literal identity.

The panel's wooden analysis cannot be reconciled with *Aetna Health*, and it further departs from this and other circuits' approaches to ordinary preemption, which uniformly focus on equivalence, not literalism. As this Court observed in *Foley*, the Copyright Act preempts "all state causes of action based on a right found in the Act **or an equivalent to such a right**," *Foley*, 249 F.3d at 1285 (emphasis added), which is why the test is whether an extra element "'changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim,'" *id.* (quoting *Computer Assocs.*, 982 F.2d at 716).

Other circuits uniformly agree. In accord with the Second Circuit's decision in *Computer Associates*, the Ninth Circuit explained in *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134 (9th Cir. 2006), that

11

> [t]he mere presence of an additional element . . . is not enough to qualitatively distinguish Laws's right of publicity claim from a claim in copyright.  The extra element must transform the nature of the action.  Although the elements of Laws's state law claims may not be identical to the elements in a copyright action, the underlying nature of Laws's state law claims is part and parcel of a copyright claim.

*Id.* at 1144.  *See also Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365 (5th Cir. 2020) (stating "[w]e evaluate the equivalency of the protected rights by applying the 'extra element' test" to determine whether state-law claims "'fall within the general scope of federal copyright law'" (quoting *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 655 (5th Cir. 2017))); *OpenRisk, LLC v. Microstrategy Servs. Corp.*, 876 F.3d 518, 524-25 (4th Cir. 2017) ("[C]ritically, not any 'extra element' will do.  Only when an extra element 'changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim' is preemption avoided." (quoting *United States ex rel. Berge v. Bd. of Trs.*, 104 F.3d 1453, 1463 (4th Cir. 1997))); *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 909-10 (7th Cir. 2005) (analyzing whether state right is "equivalent" to copyright by asking whether it is "qualitatively distinguishable from that governed by federal law"); *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 217-18 (3rd Cir. 2002) (applying extra element test to determine whether state-law claims are "equivalent to the exclusive rights within the general scope of the Copyright Act" and explaining that "[n]ot every extra element is sufficient to establish a qualitative

12

difference between rights protected by federal copyright law and that by state law"); *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455-56 (6th Cir. 2001) (evaluating "the so-called 'equivalency' or 'general scope' requirement" of copyright preemption by examining whether an "extra element changes the nature of the action so it is qualitatively different from a copyright infringement action"); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993) (applying extra element test to determine whether state claim is "qualitatively different from, and not subsumed within, a copyright infringement claim").

If determining whether state-law claims fall within the scope of the federal copyright cause of action were as simple as a rote comparison of elements, the circuit courts of appeals would not have developed the extra element test or needed to make clear that a claim falls outside the scope of copyright only when an extra element creates qualitative differences. The panel decision's rote comparison of elements is a departure from uniform, settled precedent.

Again, that body of precedent cannot be distinguished on the ground that some of it concerns ordinary rather than complete preemption. The question for ordinary and complete preemption alike is whether a state-law claim falls within the federal cause of action. As discussed above, there is no cognizable distinction between falling within a copyright cause of action for purposes of ordinary preemption, and falling within a copyright cause of action for purposes of complete preemption. And

13

any attempt to draw such a distinction conflicts settled law in the Second, Fourth, Fifth, and Sixth Circuits, all of which reject it.

The panel's opinion will sow confusion and spread error if not corrected. Rehearing en banc is warranted.

## B.    Additional Issue Warranting Panel Rehearing

Celebrity respectfully requests panel rehearing on the grounds set forth above in its request for rehearing en banc.   In addition, Celebrity submits that panel rehearing is warranted for the further reason that the panel misapprehended Poet's unjust enrichment claim as based on an allegation that Celebrity exceeded the terms of the parties' license agreements, when in fact it is undisputed that all agreements between the parties had expired, and no license agreement existed at the time of the allegedly infringing acts.

In holding that the unjust enrichment claim falls outside the scope of a copyright claim, the panel explained: "Poet alleged that Celebrity's use was unfair— not because Poet owned a registered copyright for its shows—but because Celebrity exceeded the terms of its licenses without paying Poet to use its creations." (Op. 13-14.)  But Poet did not and could not allege that Celebrity exceeded the terms of its licenses, because all license agreements between the parties had expired.

There is no dispute about that fact.  Poet's complaint admits that the last license agreement ended on March 19, 2016 (Doc. 1-2 – Pg. 8, ¶ 20), and alleges

only that Celebrity used video recordings and still photographs "beyond the limited license *it once had*" (Doc. 1-2 – Pg. 10 ¶ 26). In moving to remand, Poet admitted that it brought a claim for unjust enrichment rather than a claim for breach of contract "because the contracts have expired." (Doc. 30 – Pg. 8.) The panel's opinion itself characterizes Poet's unjust enrichment claim as concerning benefits allegedly conferred upon Celebrity "after the termination of the parties' agreements." (Op. 13.) There was no license. Treating Poet's claim as one for exceeding the terms of a nonexistent license makes no sense.

Poet's unjust enrichment claim is not based on exceeding the terms of license agreements. It is a copyright claim dressed up in state common-law clothing. Panel rehearing is warranted.

## VI.    CONCLUSION

Celebrity respectfully requests that the Court grant this petition for rehearing en banc and panel rehearing.

15

Respectfully submitted,

/s/ John C. Carey
John C. Carey
jcarey@careyrodriguez.com
Juan J. Rodriguez
jrodriguez@careyrodriguez.com
**CAREY RODRIGUEZ, LLP**
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Tel.: (305) 372-7474

David M. Levine
dlevine@sfl-law.com
**SANCHEZ FISCHER LEVINE, LLP**
1200 Brickell Avenue, Suite 750
Miami, Florida 33131
Tel.: (305) 925-9947

*Counsel for Defendant/Appellant*

16

## <u>CERTIFICATE OF COMPLIANCE</u>

This petition complies with the type-volume limitations of Fed. R. App. P. 35(b)(2)(A) because it contains 3,542 words, excluding the parts of the Brief exempted by Fed. R. App. P. 40(b)(1).

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2016 in 14 point Times New Roman font.


/s/ John C. Carey
*Counsel for Defendant/Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 5th day of June, 2023, I caused this Appellant's Combined Petition for Rehearing and Rehearing *En Banc* to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

I further certify that on this 5th day of June, 2023, I caused the required number of bound copies of the foregoing Appellant's Combined Petition for Rehearing and Rehearing *En Banc* to be filed, via FedEx, with the Clerk of this Court.

/s/ John C. Carey
*Counsel for Defendant/Appellant*

# ADDENDUM

[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10410

_____

POET THEATRICALS MARINE, LLC,
POET PRODUCTIONS, LLC,
POET TECHNICAL SERVICES, LLC,
POET HOLDINGS, INC.,

                                         Plaintiffs-Appellees,

_versus_

CELEBRITY CRUISES, INC.,

                                         Defendant-Appellant,

ROYAL CARIBBEAN CRUISES, LTD., et al.,

2                     Opinion of the Court                    21-10410

                                                    Defendants.

                        ————————————

                  Appeal from the United States District Court
                      for the Southern District of Florida
                      D.C. Docket No. 1:20-cv-24619-CMA

                        ————————————

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

        This is a case about shows on cruise ships.  Poet Theatricals
Marine, LLC[1] and Celebrity Cruises, Inc. entered into a series of
agreements.  In those agreements, Poet agreed to produce shows
for Celebrity's ships.  When those agreements went south, Poet
sued Celebrity in state court, asserting various claims under state
law.  Celebrity, in turn, removed the case to federal court.  Celebrity argued that Poet's state-law claims were actually federal copyright claims.  In doing so, Celebrity invoked the doctrine of complete preemption, which treats certain state-law claims as if they
were federal.

_____

[1]  The plaintiffs were Poet Theatricals Marine, LLC, Poet Productions, LLC,
Poet Technical Services, LLC, and Poet Holdings, Inc.  We'll refer to them
together as "Poet."

The district court dismissed all of Poet's claims except for one: a state unjust enrichment claim. The district court concluded that the unjust enrichment claim was not completely preempted by the Copyright Act. The district court declined to exercise supplemental jurisdiction over that claim and remanded it to state court. On appeal, Celebrity argues that the district court erred by remanding the claim because it was completely preempted.

We affirm. A state-law claim is completely preempted (and thus removable) if (1) a federal statute creates an exclusive cause of action and (2) the state-law claim falls within that exclusive federal cause of action. Even if the Copyright Act created an exclusive federal cause of action (at step one), Poet's unjust enrichment claim fell outside of that cause of action (at step two). Because Poet's unjust enrichment was not completely preempted, the claim was neither federal nor removable. As the district court concluded, it belonged in state court.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Poet is an entertainment company. As part of its business, Poet created, produced, and executed live shows for cruise ships. In 2007, Poet signed a series of agreements with Celebrity Cruises, Inc. In those agreements, Poet agreed to produce shows for Celebrity. These shows regularly appeared on Celebrity's ships until the agreements ended in 2016. Over the course of these performances, Celebrity took videos and photographs of Poet's shows.

The contracts gave Celebrity "the exclusive right and limited license to use, perform or display [Poet's] shows" on Celebrity's ships for the term of the agreements. They also stated that, if Celebrity wanted to "use any [p]roject [m]aterials for any other purpose other than in [Poet's] [s]hows within the scope" of the agreements, Celebrity had to "obtain a license for such use from" Poet. "Project materials" were defined to include Poet's intellectual property developed and used in its shows. The agreements provided that "[a]ll [p]roject [m]aterials shall be and remain the sole property of [Poet] and shall be delivered to [Poet] upon termination" of the agreements.

According to Poet, Celebrity didn't live up to these agreements. The agreements granted Celebrity a "limited license" to use, perform, or display the shows over the duration of each agreement. But Celebrity "continued to use the video recordings and still photographs of scenes in Poet's shows in promotional materials . . . following termination of the agreements." Celebrity displayed images of Poet's shows on its websites, brochures, and posters. And Celebrity continued to use videos of Poet's shows on its YouTube channels and its website.

Poet sued Celebrity, its parent corporation, and nine travel agencies in Florida state court. Poet asserted twenty-one state-law causes of action, including one against Celebrity for unjust enrichment (count two). In setting out its unjust enrichment claim, Poet alleged that it had "granted [Celebrity] a limited license to use Poet's intellectual property." But Celebrity continued to use and

benefit from Poet's intellectual property outside the terms of that limited license.  And so Poet alleged that Celebrity was liable for unjust enrichment.  Although Poet's claim was based on Celebrity using its intellectual property, Poet didn't bring any federal copyright claims.

Celebrity removed the case to federal court.  In doing so, Celebrity asserted federal question jurisdiction through the complete preemption doctrine.  Celebrity recognized that, under the well-pleaded complaint rule, a plaintiff may generally "avoid federal jurisdiction by exclusive reliance on state law."  But there is an exception:  when federal law has "entirely displace[d] any state cause of action," we will treat those displaced state causes of action as federal claims "removable to federal court."  Celebrity argued that the Copyright Act completely preempts state law in this way.  And it contended that Poet's state-law claims fell within the Copyright Act's scope such that Poet's claims were (in fact) federal copyright claims.

Poet moved to remand.  Poet argued that complete preemption was a "rare doctrine" that the Supreme Court had applied in only three statutes:  the Labor Management Relations Act, the Employee Retirement Income Security Act, and the National Bank Act.  Poet pointed out that this court had "display[ed] no enthusiasm to extend the [complete preemption] doctrine into new areas of law."  Poet also argued that, even if the Copyright Act could completely preempt state law, the Copyright Act didn't completely

preempt its particular claims in this case. That's because, in Poet's view, its claims fell outside the Copyright Act's scope.

The district court agreed almost entirely with Celebrity. First, the district court—following the unanimous view of other circuits that have considered the question—concluded that the Copyright Act completely preempts state-law claims that fall within the Act's scope. Second, the district court held that twenty of the twenty-one claims were completely preempted. The sole exception was Poet's unjust enrichment claim against Celebrity. The district court reasoned that the unjust enrichment claim fell outside the Copyright Act's scope and thus wasn't completely preempted.

Because it found that the Copyright Act completely preempted twenty of Poet's state-law claims, the district court concluded that it had federal question jurisdiction over the case. In other words, it found that twenty of Poet's "state-law claims" were really federal copyright claims. The district court thus denied Poet's motion to remand. But it dismissed those twenty claims without prejudice, leaving only the state unjust enrichment claim against Celebrity. This claim, the district court concluded, was not completely preempted because it fell outside the Copyright Act's scope. The district court then declined to exercise supplemental jurisdiction over the unjust enrichment claim and remanded it to state court.

Celebrity timely appealed the district court's decision to remand Poet's unjust enrichment claim. None of Poet's other claims are on appeal.

## STANDARD OF REVIEW

"Whether a district court may exercise jurisdiction over a case based upon complete preemption is a question of law that this court reviews de novo." *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1352 (11th Cir. 2003) (cleaned up).

## DISCUSSION

Celebrity argues that Poet's state unjust enrichment claim is completely preempted by the Copyright Act—such that the claim is in fact a federal copyright claim. Because the unjust enrichment claim arises (in Celebrity's view) under federal law, Celebrity contends that the district court erred by remanding the claim to state court. This raises two questions. First, does the Copyright Act create an exclusive cause of action? Second, does Poet's unjust enrichment claim fall within that exclusive cause of action? Poet's claim is completely preempted only if the answer to both of these questions is "yes." We'll take each in turn.

### Complete Preemption

The district court asserted jurisdiction under the removal statute. *See* 28 U.S.C. § 1441. "The removal statute provides that any civil action brought in state court may be removed to federal court . . . so long as the federal court has original jurisdiction over the case under either federal question or diversity jurisdiction."

*Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.3d 851, 854 (11th Cir. 1999). The parties agree that there's no diversity jurisdiction in this case because they aren't completely diverse. And so our power to hear this case hinges on whether we have federal question jurisdiction.

The presence of federal question jurisdiction is generally governed by the well-pleaded complaint rule. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* "The rule makes the plaintiff the master of the [case]; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* It's thus "settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption." *Id.* at 393.

But there's an exception—or corollary—to the well-pleaded complaint rule: the complete preemption doctrine. Under the complete preemption doctrine, a complaint that (on its face) raises only state-law claims can still be removed "when a federal statute wholly displaces the state-law cause[s] of action through complete pre-emption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). In assessing whether Congress has completely preempted state law, the "dispositive question" is whether "Congress intended the federal cause of action to be exclusive." *Id.* at 9 & n.5. If so, any state-law claim falling within that exclusive federal cause of

action "necessarily arises under federal law," rendering the case "removable." *Id.* at 9.

The doctrine is based on the idea that, "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.* at 8. In other words, if Congress has entirely displaced state law and replaced it with a federal cause of action, there's no such thing as a state-law claim falling within that cause of action. It can only be federal. And so the claim must be removable. The doctrine is designed, at least in part, to combat artful pleading: "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983); *see also* Arthur R. Miller, *Artful Pleading: A Doctrine in Search of Definition*, 76 Tex. L. Rev. 1781, 1785 (1998) ("[A] plaintiff may not disguise an inherently exclusive federal cause of action, which, if properly pled, would provide a basis for removal.").

Complete preemption is "rare." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1260 n.16 (11th Cir. 2011). The Supreme Court has found only three statutes to completely preempt state law: (1) section 301 of the Labor Management Relations Act, *see Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560–61 (1968); (2) section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, *see Metro. Life*

*Ins. v. Taylor*, 481 U.S. 58, 62–63 (1987); and (3) sections 85 and 86 of the National Bank Act, *see Beneficial Nat'l Bank*, 539 U.S. at 11.

Turning to our case, Celebrity argues that the Copyright Act completely preempts state law. Every circuit to consider the issue has held that the Copyright Act provides an exclusive federal cause of action and thus is completely preemptive. *See GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012) ("We hold that [s]ection 301(a) of the Copyright Act completely preempts the substantive field."); *Ritchie v. Williams*, 395 F.3d 283, 287 (6th Cir. 2005) (same); *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) (same); *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 232 (4th Cir. 1993) (same).

But we don't need to decide the issue here. We'll assume—without deciding—that the Copyright Act is completely preemptive. As we'll see, though, that won't help Celebrity's appeal. That's because it's not enough to say that a federal statute completely preempts state law. Instead, a removing party relying on complete preemption must also show that the plaintiff's state-law claim falls within the federal statute's exclusive cause of action. It's only then that the claim is completely preempted, offering a basis for removal. On this point, Celebrity falls short.

*Complete Preemption Applied to Our Claim*

We now turn to whether Poet's claim falls within the Copyright Act's exclusive cause of action. "[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily

'arises under' federal law." *Beneficial Nat'l Bank*, 539 U.S. at 7 (quoting *Franchise Tax Bd.*, 463 U.S. at 24). A state-law claim "falls within the scope" of an exclusive federal cause of action when "an individual, at some point in time, could have brought [the state-law] claim under" that exclusive federal cause of action. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (cleaned up).[2]

But Poet couldn't have brought a copyright claim, so its unjust enrichment claim doesn't fall within the Copyright Act's cause of action. To establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)); *accord Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020) (same).

As to the first element (ownership of a valid copyright), "a plaintiff must prove that [its] work is original and that the plaintiff complied with applicable statutory formalities." *Latimer v.*

---

[2] In *Davila*, the Supreme Court held that there were two steps in assessing whether state-law claims fell within ERISA's exclusive cause of action. A claim is completely preempted by ERISA where (1) the plaintiff "could have brought his claim under ERISA" *and* (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. Some courts have extended this two-part test to other statutes. *See, e.g., Hawaii ex rel. Louie v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1037 (9th Cir. 2014). Because Celebrity fails at the first step, we need not decide whether the second step also applies to our complete preemption analysis for the Copyright Act.

*Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010) (cleaned up).  One of those statutory formalities is the Copyright Act's registration requirement, which provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made."  17 U.S.C. § 411(a); *see also Smith v. Casey*, 741 F.3d 1236, 1242 (11th Cir. 2014) (explaining that registration is one of the Copyright Act's necessary "formalities").

In other words, "the Copyright Act [generally] requires copyright holders to register their works before suing for copyright infringement."  *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010); *see, e.g.*, *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 856 F.3d 1338, 1339 (11th Cir. 2017) (dismissing a copyright claim where the plaintiff "did not allege that the Register of Copyrights had yet acted on the [copyright] application"), *aff'd*, 139 S. Ct. 881 (2019); *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1341 (11th Cir. 2018) (explaining that "a complaint claiming infringement of an unregistered copyright can be dismissed for failure to state a claim").[3]

Here, Poet never alleged that it registered *any* copyright before bringing this case.  In fact, both sides agree that Poet never registered its copyrights.  The parties also agree that, because Poet has no registration, any copyright claim it brought "would have to

---

[3]  There are some exceptions to this registration requirement.  *See* 17 U.S.C. § 411(a).  But none of those exceptions apply here.

be dismissed." This isn't a case, then, where Poet *could have* brought a federal claim but didn't to avoid federal court. Poet *couldn't* have brought a copyright claim; it had no registration. Because Poet couldn't have brought a copyright claim, its unjust enrichment claim doesn't fall within the Copyright Act's exclusive cause of action. Poet's claim isn't completely preempted.

Comparing a copyright claim and Poet's unjust enrichment claim only confirms that Poet's claim falls outside the Copyright Act's exclusive cause of action. A copyright claim requires "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361. By contrast, an unjust enrichment claim, under Florida law, requires proof that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)). These elements are entirely different.

Poet's allegations also show that its claim falls outside the Copyright Act's exclusive cause of action. Poet asserted that Celebrity was liable for unjust enrichment because (1) Poet conferred a benefit (its intellectual property) on Celebrity, (2) Celebrity accepted, used, and retained that intellectual property, and (3) it would be unjust for Celebrity to retain the benefits of that use after the termination of the parties' agreements. Poet alleged that

Celebrity's use was unfair—not because Poet owned a registered copyright for its shows—but because Celebrity exceeded the terms of its licenses without paying Poet to use its creations.

Against all this, Celebrity never tries to show that Poet's unjust enrichment claim falls within the Copyright Act's exclusive cause of action.  Instead, Celebrity argues that Poet's unjust enrichment claim falls within section 301(a) of the Copyright Act, which expressly preempts certain state claims.  *See* 17 U.S.C. § 301(a). Specifically, the Act preempts any state claim asserting rights that "(1) fall within the 'subject matter of copyright' set forth in sections 102 and 103 [of the Act] and (2) are 'equivalent to' the exclusive rights of section 106."  *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1311 (11th Cir. 2001) (quotation omitted).  Celebrity argues that Poet's claim falls within section 301(a) and that this is enough to find *complete* preemption.

Some of our sister circuits have suggested that Celebrity is right:  that state-law claims preempted by the Copyright Act are *completely* preempted—giving rise to removable federal claims. *See, e.g.*, *Briarpatch*, 373 F.3d at 305 ("[T]he district courts have jurisdiction over state law claims preempted by the Copyright Act.");  *Rosciszewski*, 1 F.3d at 232 ("[A]ctions pre-empted by [section] 301(a) of the Copyright Act [are to] be regarded as arising under federal law.");  *GlobeRanger*, 691 F.3d at 706 (holding that the plaintiff's claims were completely preempted to the extent "the Copyright Act preempt[ed] any of [the plaintiff's] claims").

But this approach, in our view, "conflate[s] complete and or-
dinary preemption." *See Griffioen v. Cedar Rapids & Iowa City
Ry.*, 785 F.3d 1182, 1190 (8th Cir. 2015).   Ordinary preemption
"arises when the text of a federal statute explicitly . . . displace[s]
state law." *See Am.'s Health Ins. Plans v. Hudgens*, 742 F.3d 1319,
1329 (11th Cir. 2014) (quotation omitted).   That's what section 301
of the Copyright Act does:  it expressly displaces state-law claims
that fall within its reach.   Complete preemption, on the other hand,
arises—not where a state claim falls within a statute's preemption
provision—but where the state-law claim "comes within the scope
of the [exclusive] federal cause of action." *Beneficial Nat'l Bank*,
539 U.S. at 7 (quoting *Franchise Tax Bd.*, 463 U.S. at 24).

Put another way, "[t]he scope of complete preemption turns
primarily on the provision creating the federal cause of action—not
on an express preemption provision." *Griffioen*, 785 F.3d at 1190.
"It is the federal cause of action that ultimately supplants the state-
law cause of action and effectuates complete preemption." *Id.*  It's
only when a state-law claim "comes within the scope of [the exclu-
sive federal] cause of action" that the claim is completely
preempted. *Davila*, 542 U.S. at 208 (quotation omitted).   The ques-
tion, in other words, is whether the plaintiff "could have brought
[its] claim under" the exclusive federal cause of action. *Id.* at 210.
And so Celebrity's argument—that Poet's claim is expressly
preempted—misses the point.   That argument goes to the merits,
not to jurisdiction.   It's one that the state courts can (and should)
decide. *See Caterpillar*, 482 U.S. at 398 n.13 (noting that "the merits

of . . . any of the [parties' ordinary] pre-emption arguments . . .
must be addressed in the first instance by the state court").

Indeed, courts routinely look to the federal cause of action—
not a statute's preemption provision—in assessing complete
preemption. *See, e.g.*, *Metro. Life Ins.*, 481 U.S. at 66 (finding that
a state-law claim was completely preempted because the state
"cause of action [fell] within the scope" of ERISA's "civil enforce-
ment provisions"); *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393,
411 (3d Cir. 2021) ("The question is whether the [plaintiff's] allega-
tions fall within the scope of the [federal] cause of action—that is,
whether the claims *could have* been brought under that section."
(quotation omitted)); *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th
580, 586 (5th Cir. 2022) ("Assuming—without deciding—that the
[federal] cause of action is completely preemptive, the question is
whether [the plaintiff] could have brought the instant claims under
that cause of action." (quotation omitted)).

Celebrity would instead have us federalize any claim that
comes within the Copyright Act's preemption provision. But that
approach would take what's meant to be a "narrow exception" to
the well-pleaded complaint rule and blow it wide open, allowing
the removal of more cases to federal court and undermining our
system of dual sovereignty. *See Beneficial Nat'l Bank*, 539 U.S. at
5; *cf. Healy v. Ratta*, 292 U.S. 263, 270 (1934) ("Due regard for the
rightful independence of state governments . . . requires that [fed-
eral courts] scrupulously confine their own jurisdiction[.]"). That's
because—like many statutes—the Copyright Act's preemption

provision is broader than its cause of action.  *See* 1 Nimmer on Copyright § 1.16[A] ("[T]he shadow actually cast by the Act's preemption is notably broader than the wing of its protection." (quotation omitted)).  "Therefore, a state-law claim may be . . . preempted [by section 301] but not completely preempted under" the Copyright Act's exclusive cause of action.  *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009).  In such a case, the proper approach is to "assert preemption as a defense" in state court, not to "remov[e] [the case] to federal court."  *Id.*  That's what Celebrity must do.

*              *              *

In sum, we agree with the district court that the Copyright Act doesn't completely preempt Poet's unjust enrichment claim. That claim belongs in state court.

**AFFIRMED.**